GEORGE W. MASON AND HAZEL B. MASON, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97350. Promulgated May 29, 1940.

*Thomas S. Forward, C. P. A.*, for the petitioners.
*W. W. Kerr, Esq.*, for the respondent.

LEECH: Respondent determined a deficiency of $10,827.57 in petitioners' income tax for the calendar year 1935. The issue presented is the propriety of the action of respondent in including in income an amount representing the fair market value of certain stock acquired by the petitioner, George W. Mason, in the taxable year.

The facts are stipulated. Petitioners are husband and wife and filed a joint return for the taxable year. The word "petitioner", as hereinafter used, will refer to the petitioner, George W. Mason. On September 7, 1933, the petitioner entered into the following contract:

MEMORANDUM OF AGREEMENT, made this 7th day of September, 1933, by and between KELVINATOR CORPORATION, a corporation organized and existing under the laws of the State of Michigan, having its principal office in the City of Detroit, County of Wayne, in said State, party of the first part, hereinafter called the "corporation", and GEORGE W. MASON, of said City of Detroit, party of the second part, hereinafter called "Mason", WITNESSETH:

WHEREAS, Mason has a contract of employment with this corporation expiring December 10, 1934, and

WHEREAS, the parties hereto desire to terminate such contract as of October 1, 1933 and to enter into a new contract extending such employment upon the terms hereinafter set forth,

IT IS HEREBY AGREED, as follows:

FIRST: The corporation hereby employs Mason upon the following terms and conditions; and Mason accepts said employment upon the following terms and conditions:

(1) The term of employment shall be four (4) years from and after the first day of October, 1933;

(2) The rate of compensation shall be

(a) Fifty thousand dollars ($50,000) per annum payable in equal semi-monthly installments;

(b) One thousand two hundred and fifty (1250) shares of full paid stock of the corporation to be delivered on January 1, 1934, and quarterly thereafter to and including October 1, 1937.

(3) The corporation further agrees as further compensation to Mason to pay him on January 15, 1935, 1936, 1937 and 1938, a sum equal to ten per cent (10%) of the net earnings of the preceding fiscal year, determined as hereinafter set forth after deducting therefrom an amount equal to five per cent (5%) upon the capital and surplus of the corporation determined as hereinafter set forth. The corporation agrees to sell and Mason agrees to purchase at Ten Dollars ($10.00) per share on January 15th of each year as above set forth a number of shares of fully paid stock of the corporation equal to the sum, if any, payable to Mason on such date pursuant to the preceding section of this paragraph (3); provided, that hereunder the corporation will not pay in excess of $400,000 nor may Mason purchase in excess of 40,000 shares of such stock during the term of the contract; and provided further that the corporation will not pay in excess of $100,000 nor may Mason purchase in excess of 10,000 shares of such stock in any one year except that (a) for any year of this contract the corporation may and will pay Mason such an amount as will make the total payment to Mason under this paragraph (3) $100,000 per annum for each year of this contract theretofore expired in case

10% of the net earnings since October 1, 1933 computed under the formula therein set forth shall equal or exceed $100,000 per annum for the years already expired and (b) Mason may and will purchase such number of shares as will make the total number of shares purchased by him under this paragraph at $10.00 per share equal the amount paid him under the above exception (a).

(a) Net earnings as herein used shall be the amount of the net earnings of the company and its subsidiaries as determined by the Auditors of the company and approved by the board, after all necessary charges including depreciation and income taxes but before deducting the amount of this special compensation for the fiscal years ended September 30, 1934 to September 30, 1937. Net earnings shall not include any profits or losses arising from the extraordinary sale of capital assets having particular reference to the sale of any of the plants or properties of the corporation or its subsidiaries. The term subsidiaries shall mean all corporations owned in full by the corporation or its subsidiaries, and all corporations so owned in part to the extent of the earnings or losses attributable to the stock owned by the corporation.

(b) The capital and surplus of the corporation as used herein shall mean the capital and surplus and undivided profits of the corporation at the beginning of the fiscal year for which the determination of profits shall be made plus the amount of any new capital added during the year (except by way of earnings) reduced by a percentage equal to the number ‘of months for which such capital was not contributed in relation to the whole fiscal year.

(c) In case the fiscal year of the corporation shall be modified, the provisions of this paragraph (3) shall be deemed to be modified and readjusted accordingly.

(4) In case there shall be any rearrangement of the capital structure of the corporation which shall affect the number or kind of shares of capital stock, the purchase price per share fixed herein at Ten Dollars ($10.00) shall be adjusted accordingly.

(5) This agreement shall not be affected by the disability by reason of illness or otherwise of Mason to perform his duties for a period of not exceeding six (6) consecutive months, but it is mutually agreed that in the event of the death of Mason or his total disability for a period of time exceeding six (6) consecutive months, this agreement may be terminated as to the unexpired term thereof, except as to the provisions of paragraph (3) of this Article First, by the corporation, by resolution of its board of directors, by giving notice in writing to Mason or his personal representatives fixing a date not less than thirty days after the date of said notice, upon which this agreement shall terminate as to the unexpired term thereof, and thereupon the agreement shall so terminate on the date mentioned in the notice. In the event that the corporation shall so terminate this agreement for the unexpired term thereof, then.

(a) As to the further compensation granted to Mason by paragraph (3) of this Article First, the corporation shall pay Mason or his personal representatives when provided therein, that proportion of said further compensation as his term of actual service under this contract in said fiscal year shall bear to the entire year.

(b) The corporation shall, within thirty (30) days after the date mentioned in said notice for the termination of this agreement, pay to Mason or his personal representatives the sum of One Hundred thousand dollars (100,000) in cash.

(6) The corporation shall provide all stamps required in connection with the issue and delivery to Mason of all shares of stock under this agreement provided to be delivered to him or to his personal representatives.

SECOND: Mason hereby agrees to devote his entire time and attention to the business of the corporation and to the performance of his duties hereunder, and as an officer of the corporation, during·such periods of the term hereof as he shall be an officer, except the ordinary duties of a director in other corporations not in a competitive business.

THIRD: The parties hereto mutually agree that Mason subject to the powers by law vested in the board of directors and executive committee, shall have, as general manager, the full control and management of the business and·affairs of the corporation, including, without limiting the generality of the foregoing,. the power and authority to manage and conduct all manufacturing operations,. the engineering, designing and development of the product, the sale of all products, and all details of the business, the purchase of all materials, supplies, machinery, the equipment and appliances required in the business, all work of accounting under and in accordance with the rules and methods prescribed by the board of directors or executive committee; and employ, fix the compensation of, and discharge all assistants, agents and employes. He shall make reports to the board and executive committee, and shall not be subject to any other officer or authority in the corporation.

FOURTH: The corporation agrees that it will adopt all necessary resolutions to make the foregoing provisions of this contract effective.

FIFTH: The corporation hereby agrees, as an independent covenant, to use its best endeavors to cause Mason to be continued in the office of director and chairman of the board and/or president during the term of this contract; and Mason agrees to accept the offices of director, chairman of the board, and/or president, and to perform the duties thereof if so elected.

SIXTH: The agreement dated May 14, 1931, between the parties hereto is hereby terminated and cancelled effective as of October 1, 1933; provided, however, that Mason shall have all rights accruing to him thereunder for the fiscal year ending September 30, 1933; and in consideration for Mason's consenting to such cancellation the Corporation agrees to deliver to him on October 2, 1933, Five thousand (5000) shares of its full paid stock.

The amount determined as payable to George W. Mason on January 15, 1935, computed upon net earnings of the corporation for the preceding year under section (3) of the foregoing contract, was $49,891.69. Pursuant to the provisions of that section, he acquired 4,989 shares of the capital stock of Kelvinator Corporation on that date, having a then fair market value of $84,189.38. On September 7, 1933, when the above contract was executed, the stock in question had a fair market value of $11.4375 per share. Petitioner devoted his entire time to the affairs of Kelvinator Corporation during the taxable year.

In making their return for the calendar year 1935, petitioners included in income the amount of $49,891.69. In determining the deficiency respondent increased the reported income by the difference between this amount and $84,189.38, the fair market value of the stock acquired.

Respondent contends that the contract for purchase of the stock by petitioner was an inseparable part of the contract of employment, that the stock which was received thereunder constituted compensation for services performed and, consequently, income to the extent

of its fair market value when received. Petitioner insists that the agreement in the contract obligating him to purchase common stock of the company at $10 per share with the bonus payable to him under the contract for services rendered is separate and distinct from the contract of employment. It is argued that, under the employment contract, petitioner received a money bonus which was compensation for services and therefore taxable income, and with this income, under the contract to convert it into common stock of the company, he purchased stock at the agreed price of $10 per share. Petitioner relies on *Omaha National Bank* v. *Commissioner*, 75 Fed. (2d) 434, and *Gordon M. Evans*, 38 B. T. A. 1406. See also *Hawke* v. *Commissioner*, 109 Fed. (2d) 946. These cases hold that stock acquired by employees under stock purchase plans, with credits from earnings of the company on the purchase price, was purchased at the agreed price and that the employee is taxable only on the amount of the credits granted.

The facts here are clearly distinguishable from those in the cited cases and do not support, we think, the reasoning or conclusion in those cases. In those cases the contract under which the right to acquire the stock and the right to the credit arose was distinct and separate from the contract of employment, and the stock was acquired voluntarily, under the former.

Here the petitioner has not subscribed for a definite number of shares of stock for which he is obligated to pay nor has he been granted merely a right to purchase. He has executed a binding contract to render certain service, one of the considerations for which is a bonus, measured in money, computed upon the net earnings of the employer. He, in turn, by that same contract, obligates himself to convert this money, concurrently with its receipt, into stock of the employing company at $10 per share. The obligation which he assumes is a part of his contract of employment. He has no liability with respect to the so-called stock purchase except under that contract and the entire amount which he contends is the purchase price of the stock moves to him under that contract for service rendered. When received, it is impressed with the obligation that it be immediately surrendered for shares of stock. See *Hazeltine Corporation* v. *Commissioner*, 89 Fed. (2d) 513; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77; *Edwin L. Dana*, 36 B. T. A. 231. The only thing which he could or did receive, free to his "unfettered use", under the bonus provision of his employment contract, restricted by his agreement thus to convert, was stock of the employing company, and all that company could or would be forced to surrender ultimately was stock. If a money payment of the bonus

was actually made to petitioner, and on this point the record is silent, it was only a gesture, an incident in the transaction, the result of which would leave petitioner with stock of the company which constituted his compensation for services rendered. The bonus was stated in terms of money but, under the agreement, we think, that medium had no significance as such but was merely a measure to determine the number of shares of stock which petitioner was entitled to receive.

We do not agree with respondent that the question is controlled by *Albert Russel Erskine*, 26 B. T. A. 147. In that case, as in the cases of *D. C. Bothwell*, 27 B. T. A. 1351; 77 Fed. (2d) 35; *Irving D. Rossheim*, 31 B. T. A. 857; 92 Fed. (2d) 247; *Delbert B. Geeseman*, 38 B. T. A. 258, and *Charles E. Adams*, 39 B. T. A. 387, for services to be rendered, the taxpayer was granted an *option* to purchase stock which had a definite value when exercised. Here there was no option. We think that in the present case, under the contract executed, the petitioner has in fact agreed to render service for certain considerations. One of these was a bonus consisting of shares of stock of the employing corporation, the number of which was to be measured by the net earnings of the company during the year. This stock, in consequence, constitutes a payment for services. Petitioner has therefore realized income to the extent of its fair market value when received.

Reviewed by the Board.

*Decision will be entered for the respondent.*